OPINION of the Court, by
Ch. J. Boyle.
In consideration of a marriage about to take place between John Hutchinson and Mary Steers, he agreed with her that notwithstanding the intermarriage she should at any time thereafter have full power and authority, without his consent, to give, sell and dispose of two slaves of which she was possessed m her own right, and their future increase, to anv person or persons, or to any use or uses she might please, whether the same should be done by a declaration in writing in the nature of a last will and testament, or by any other deed in writing, signed by her, and attested by one or more credible witnesses. This agreement was signed and sealed by both parties, and shortly after the marriage was solemnized between them. Hutchinson had sundry children by a former '.rife, and having had two by Mary Steers, he died, having a will by which he devised to his wife all his estate, both real and personal, during her widowhood or natural life, for the pin pose of supporting herself and such of his children as chose to live with h<'¡.'’ Prom this devise several articles of property Were excepted, which were devised to his children, both of the first arid second marriage, and the estate devised to his wife after her dtyath or marriage was devised : over to his children generally. Mrs. Hutchinson survived her husband some time and then died, leaving her v/ill duly executed, by which she devised to her two children among other things the slaves she had in her possession, being the increase of one of those mentioned in the marriage agreement.
For a distributive share of these slaves, the children by the first marriage claiming under their father’s will, brought their bill in chancery against the children of the second marriage, who claim to hold the negroes in coa- *408 test under their mother’s will. The circuit court tie-screed in favor of the complainants, and the defendants appealed to this court.
?¿1 fn-e i’u.i a we»f> r *o -j>1 ikt ■¥.•;]'. and in cp-p ii w\ *\> at tnc urn. n í!“ .
But ⅞$ toe vfsii of the hu f-band is in kch general tcims that the feparate property of the wife might or might not pafs, according to the ■validity or inva. liáíty of the ar-licks of^ mani-ehate under the articles ⅞all not be intended as deviled by the huíband , her children may hold their lega, cíes under both vfÜis,
The íirst and most unpo: tui.t qacttic-r to be decided is, whether the am-vi; >; ..s ivi r.i. :,t it, sufficient to vest, or rather to prt serve io ⅛1:,, hah! in ,(■ v a separate interest in the . -, hOi.wiiSe-t.u T.m, ! • intermarriage f
Coutracts betv.'i .-n bus! ami ,-,jd wife, niav be classed under two heads ; 1st, those that are made before mar-rige ; and 2d, those that are made after marriage. These two descriptions of contract are in several respects essentially different. With respect to those made during coverture they are ipso facto void. In legal contemplation, the very existence of the wife is merged in that oí the husband. So completes!!- is she identified with him, that for all civil purposes she is deemed to have no will of her own. A woman is therefore not only incapable of deriving any separate right from a contract with her husband during- coverture, for want of a capacity to Contract, but if such a right could exist, would be unable to enforce it by a suit at law, on account of the legal unity which is supposed to exist between them. And although a feme covert might always have sued her husband in chancery, yet it seems formerly u> have been understood that she could not claim even in equity a separate estate by a- contract with her husband during coverture, unless it had been made through the intervention of trustees. There are however some eases of a modem date, in which a gift from a husband to his wife after marriage has been supported, although no trustee intervened. But the number as well as the weight of authorities is perhaps opposed to this doc? trine. But be this as it may, it is clear that contracts made before marriage stand upon a very different footing, whether they are considered with reference to general principles, or upon the score ot authority.
IS either party is then under any incapacity to cor. tract, and their contracts are not- like those made during coverture ipso facto void. It is indeed generally true, that coutracts made between husband and wife when single, become extinguished at law by the intermarriage. Tins is,however but a general rule, and is inapplicable to the A casts where the duty or demand is cot to accrue 'until the" éx’Jtration of the coverture, and although *409 where the debt or duty is to arise during the coverture, it is extinguished at law by the marriage, upon the notion that the husband and wife are but one person in law, and cannot sue each other ; yet as they may sue each other in a court of chancery, a contract, if made with a view to their intermarriage, though void at law, will be sustained in equity. It would indeed be the most flagrant inconsistency, were the very event which was to give effect to the contract permitted to work its destruction. Nor is the intervention of trustees necessary to give validity to such a contract in equity. The same reason for the intervention of trustees does not exist in a case of this kind as exists in the case of a contract during coverture. In the one case the incapacity of the wife produces the necessity of acting through the medium of others ; but in the other, she labors under no disability to contract for herself.
Upon the score of authority there is no room for a difference of opinion upon this point. The English cases are clear, consistent and uniform in support of the position that a contract before marriage will be sustained in equity although it may have been made without the intervention of a trustee — See 2 Vern. 480, 2 Pr. Wms. 243, 2 Com. Digest 398 and 584, and the authorities there cited.
The circuit court, who decided that the contract in question was void, because it was not made through the medium of trustees, seems not to have adverted to the distinction between contracts made before, and contracts made alter marriage, and was probably misled by those cases which depended upon contracts of the latter description.
As the contract is one which a court of equity would enforce against the husband, or those claiming as volunteers under him, it seems scarcely necessary t® observe that it constitutes a sufficient ground upon which the appellants may resist the claim of the appellees, who have resorted to a court of equity for relief.
But a second question is made in this case which it seems proper should not be passed over in silence. It is contended for the appellees that the slaves in question were intended by their father to be passed by his '."ill, and that the appellants, who hold otherpra»&rl'i£ *410 uncler the will, ought not to be permitted to claim thtf slaves in opposition to the will.'
The principle is certainly correct, that a devisee can-* not claim under a will and adverse to the will at the same time. He cannot be permitted to take under one part ana reject the rest. He roust either confirm the whole or abandon the whole. Rutin this case it does not appear that the testator intended that the slaves in question should pass by his will. He has not mentioned Attn, and we cannot presume that from a devise of “his estate,” he meant to include the slaves, which-ia equity were not his. This construction, naturally resulting from the words ol the will itself, is rather fortified than weakened by a recurrence to the pan 1 testi* rnony in the cause. The testator seems generally to have treated the slaves as the separate property of his Wife : he was however, toward the dose of his life, heard by some of the witnesses to say that the marriage agreement was not binding, and to declare his intention of selling it aside or of disregarding it ; but by others lie was heard to express, about the same period, contrary s'-miments. Perhaps the fair conclusion from the whole evidence is that his mind was m a state of oscillation up./u this subject wlnn he made his will, and that be ¡. in poseíy used general language, that the slaves might pas» thereby or not, accordingly as the marriage agreement should be defined valid or otherwise. But as the agrettimat is valid, it is consistent with his intention that the slaves should not pass.
The d* cree of the circuit court is therefore erroneous and must be reversed with costs, and the cause remanded with directions that the bill be dismissed with costs.